# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DA'JUAN BURNS, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-18-03100 |
| MAHBOOB ASHRAF, et al., | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Da'Juan Burns, an inmate at North Branch Correctional Institution of the Maryland Department of Corrections (DOC), sues various officials and medical providers affiliated with North Branch for violating his constitutional right to receive adequate medical care. Burns sues Wexford Health Source, Chief Medical Officer Asrehahegn Getachew, Doctors Mahboob Ashraf and Ali Yahya, Nurses William Beeman and Tammy Buser, and Nurse Practitioners Holly Pierce and Krista Self[1] ("Medical Defendants"); Correct Rx Pharmacy Services and John Doe Pharmacist ("Pharmacy Defendants"); and, DOC Commissioner Dayena Corcoran and Correctional Officer Michael Turner ("State Defendants"). Now pending before the Court are Burns's motion for injunctive relief; Defendants' three separate motions to dismiss or, in the alternative, for summary judgment; and, Burns's motion to bar consideration of summary judgment. No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the Court will deny Burns's motion for injunctive relief, dismiss all defendants except

---

[1] In the complaint, Krista Self is listed as Kris Swan.

Nurse Buser and Officer Turner, and deny without prejudice summary judgment as to Nurse Buser and Officer Turner, the two remaining defendants.

## I. Background

### A. Allegations of the Complaint

Burns, a North Branch inmate, filed a pro se complaint, pursuant to 42 U.S.C. § 1983, alleging that various North Branch officials and medical providers violated his constitutional right to receive adequate medical care. (Compl., ECF No. 1; Supp. Compl., ECF No. 20.) In summarizing the allegations of the complaint, the Court construes all facts in the light most favorable to the plaintiff, as is required on a motion to dismiss. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Courts construe pro se complaints liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

In the complaint, Burns alleges that he suffers from varicocele, which, while sometimes benign, can be a symptom of several serious medical conditions. (*Id.* ¶¶ 15–17.) Burns alleges that, consequently, "all varicocele patients should be examined . . . for the possibility of a serious medical condition underlying their varicocele." (*Id.* ¶ 18.) A proper physical examination includes examinations in both standing and supine positions. (*Id.* ¶¶ 19–21.) "[A] varicocele persisting in the supine position is a danger sign that indicates the existence of a serious medical condition underlying the varicocele and the need for additional imaging testing to uncover exactly what that serious underlying medical condition is." (*Id.* ¶ 22.) Previously, Burns underwent "a failed surgery attempt" to alleviate his varicocele, which damaged his testicular veins. (*Id.* ¶ 128.)

Medical Defendants knew of Burns's varicocele and did not grant his request to see a urologist. As early as August 2016, Doctor Ashraf and Nurse Self were aware that, since his incarceration in Maryland, Burns had not been properly examined to rule out the existence of a

serious medical condition underlying his varicocele. (*Id.* ¶¶ 23, 29–34.) Between August 2016 and August 2017, they never provided such an examination, and they never ensured that a urologist examine Burns to confirm or rule out the existence of an underlying condition. (*Id.* ¶¶ 26, 28, 34.)

Medical Defendants were also treating Burns for bodily pain. In September 2017, Doctor Ashraf discontinued Burns's prescription for Neurontin, which Burns was taking for back pain. (*Id.* ¶ 61.) Doctor Ashraf placed Burns on Cymbalta. (*Id.* ¶ 63.) Burns reacted poorly to Cymbalta, suffering nausea, among other things. (*Id.* ¶ 66.)

In August 2017, Burns filed an internal complaint, asserting that medical staff had not provided necessary diagnostic testing and that his sick call forms were being ignored. (*Id.* ¶ 39.) Burns alleges that inmate complaints are reviewed and investigated by Wexford (*id.* ¶ 40) and Wexford "took no action" to address the complaint and respond to the sick call forms (*id.* ¶ 47). Commissioner Corcoran has a responsibility to oversee the DOC's contract with Wexford and to ensure that Wexford delivers adequate medical care to those in custody. (*Id.* ¶ 52.) When Burns's internal complaint came before Commissioner Corcoran, she took no action. (*Id.* ¶ 56.) Burns alleges that, among Wexford employees at North Branch, "there is a custom of disregarding sick call forms submitted by inmates." (*Id.* ¶ 35.) Consistent with this custom, sick call forms are regularly ignored, forgotten, or lost. (*Id.* ¶¶ 36–38.)

In October 2017, Nurse Self prescribed Tramadol,[2] a drug which Burns had used before and which had alleviated his back pain, but the pharmacist would not fill the prescription and did not explain why. (*Id.* ¶¶ 70–74.) The pharmacist works for Correct Rx, which has an agreement with Wexford and the DOC to provide pharmacy services to state inmates. (*Id.* ¶¶ 194, 196.) Burns alleges that Correct Rx maintained a policy or custom—one that saved Wexford and the

---

[2] Burns refers to Tramadol as Ultram in his complaint, but they are different names for the same drug.

3

DOC money—of allowing its employees to disregard prescriptions ordered by physicians treating state inmates. (*Id.* ¶¶ 197–98.) Pursuant to this policy of disregarding prescriptions, Correct Rx and its pharmacist refused to fill the Tramadol prescription. (*Id.* ¶¶ 197, 199.)

In December 2017, Doctor Ashraf prescribed Burns Elavil for his back pain even though he knew that Elavil caused Burns negative side effects and had proven ineffective for his pain. (*Id.* ¶¶ 75–76.)

A few weeks later, in January 2018, Burns passed out in his cell, falling and cutting open a gash above his eye. (*Id.* ¶¶ 77–80.) Burns showed Correctional Officer Turner that he was bleeding and asked to see a nurse. (*Id.* ¶ 81.) Officer Turner told Burns that he described the situation to Nurse Buser but that she told him that Burns could fill out a sick call form, to which nurses usually respond between forty-eight and seventy-two hours. (*Id.* ¶ 84.) No nurse ever saw Burns for this injury. (*Id.* ¶¶ 85–89.)

At some point, Burns saw Doctor Ashraf again and requested diagnostic testing of his varicocele, but Doctor Ashraf refused his request. (*Id.* ¶¶ 91–92.) Doctor Ashraf renewed Burns's prescriptions for Elavil and Tegretol, even though Burns pointed out that both drugs were ineffective in alleviating Burns's back pain. (*Id.* ¶¶ 96–101.)

Between February and June 2018, Burns saw several onsite medical personnel who referred him to the provider for more treatment regarding both his back pain and his varicocele. (*Id.* ¶¶ 102–09.) Burns saw the provider, Nurse Practitioner Pierce, on August 17, 2018. (*Id.* ¶ 111.) Nurse Practitioner Pierce only discussed his varicocele despite his desire to talk about his recurring back pain too. (*Id.* ¶ 112.) Nurse Practitioner Pierce observed that Burns's varicocele persisted in the supine position—an indication of a serious medical condition, (*id.* ¶ 22), according to Burns— but denied his request for imaging testing. (*Id.* ¶¶ 118, 120.)

4

After seeing Nurse Practitioner Pierce, Burns saw two doctors. On August 28, 2018, Burns discussed via "telemedicine" his varicocele with Doctor Getachew, who declined to perform any imaging testing and recommended Tylenol for the pain. (*Id.* ¶¶ 121–25.) On September 1, Burns saw Doctor Yahya, who, like Doctor Getachew, declined to perform any imaging testing and recommended Tylenol. (*Id.* ¶¶ 126–30.)

On September 15, Burns saw Nurse Beeman for unrelated issues. (*Id.* ¶ 130.) Burns mentioned that he had hurt the blood vessels in his eye when he passed out in his cell back in January. (*Id.* ¶ 131.) Nurse Beeman said there was nothing he could do about that injury because Burns was not bleeding at present. (*Id.* ¶ 133.)

To sum up, Burns alleges that the named Defendants failed to perform diagnostic tests of his varicocele and to refer him to a urologist. Defendants ignored his sick call forms. Defendants prescribed ineffective and, sometimes, harmful medication. Defendants failed to respond to a medical emergency. In general, Defendants failed to treat him for his pain. These actions were part of a custom among Wexford and Correct Rx employees to provide less than adequate treatment to inmates. Burns is seeking "declaratory relief, injunctive relief, and money damages" based on these allegations. (*Id.* ¶ 1.)

### B. Procedure

Shortly after filing his pro se complaint, Burns filed a pro se motion for a temporary restraining order (TRO) or injunctive relief. (TRO Mot. at 1, ECF No. 5.) Medical Defendants opposed injunctive relief, moved to dismiss, and alternatively moved for summary judgment. (Med. Def. M.T.D. & M.S.J., ECF No. 22.) State Defendants moved similarly. (State Def. M.T.D. & M.S.J., ECF No. 26.) Pharmacy Defendants moved to dismiss and alternatively for summary judgment. (Pharm. Def. M.T.D & M.S.J., ECF No. 58.) Burns pro se moved to bar consideration

of summary judgment pursuant to Federal Rule of Civil Procedure 56(d). (Rule 56(d) Mot., ECF No. 37.) Burns is now represented by counsel. The Court considers each pending motion.

## II. *Motions to Dismiss the Complaint*

Defendants move to dismiss the complaint in three separate motions, raising a plethora of arguments and defenses. Each motion to dismiss asserts that Burns fails to sufficiently allege a § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Regarding the claims against each defendant, except for Nurse Buser and Officer Turner, Burns fails to state plausible claims for relief.

### A. *Legal Standard*

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. *Presley v. Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists where the facts allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But, inferring the "mere possibility of misconduct" is not enough to establish a plausible claim. *Id.* at 679. Moreover, a complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se plaintiffs are held to a less stringent standard than lawyers, and courts construe their pleadings liberally, no matter how inartfully pled. *Erickson*, 551 U.S. at 94. Liberal construction is especially appropriate where a pro se plaintiff alleges civil rights violations. *Brown v. N.C.*

*Dep't of Corrs.*, 612 F.3d 720, 722 (4th Cir. 2010). Nonetheless, a pro se complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *Robb v. Md. Aviation Admin.*, Civ. No. JKB-14-1421, 2014 WL 4056030, at *3 (D. Md. Aug. 15, 2014). Pro se complaints may "represent the work of an untutored hand requiring special judicial solicitude," but a court need not recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).

Here, Burns alleges § 1983 claims against the individual defendants, but he also sues Wexford and Correct Rx. These defendants are entities that have contracted with the state to provide services to state inmates. As such, they have acted under color of state law. *See Hendrick v. Wexford Health Sources, Inc.*, 141 F. Supp. 3d 393, 401 (D. Md. 2015). Entities acting under color of state law may be liable under § 1983 pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). The Court turns first to whether Burns has sufficiently alleged the individual § 1983 claims and second to whether Burns has sufficiently alleged the *Monell* claims.

### B. Deliberate Indifference

To state a § 1983 claim, a plaintiff must allege that (1) a person acting under color of state law committed the conduct complained of, and (2) the conduct deprived the plaintiff of rights secured by the laws of the United States or the Constitution. *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991). "A defendant need not be the *sole* cause of the harm suffered by the plaintiff. Rather, a person may be held liable under § 1983 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation.'" *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 863 (D. Md. 2017) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). A government official's

7

"deliberate indifference" to a postconviction inmate's health or safety violates the Constitution's Eighth Amendment. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

To sufficiently claim deliberate indifference, a plaintiff first must allege a "serious" medical need, meaning one that "is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Martin v. Bowman*, 48 F.3d 1216, 1219 (4th Cir. 1995). A plaintiff second must allege the government official subjectively recognized both that plaintiff was exposed to a substantial risk of harm and that his or her actions were inappropriate in light of that risk. *Hearn v. Lancaster Cty.*, 566 F. App'x 231, 236 (4th Cir. 2014); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Although the deliberate indifference standard requires a showing of actual knowledge . . . it 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Burns alleges chronic medical issues—varicocele and bodily pain—as well as a medical emergency. The Court examines each alleged serious medical need in turn.

### 1. *Chronic Medical Issues*

Burns plausibly alleges serious medical needs by presenting facts about his varicocele diagnosis and treatment for chronic pain. Burns's varicocele causes him discomfort and, left untreated, could cause substantial harm, including infertility. *See Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) ("An injury is sufficiently serious . . . as long as it rises above the level of de minimus harm."). Thus, Burns alleges a specific medical need and resulting serious harm. *See, e.g., Ervin v. Mangum*, 127 F.3d 1099 (table), 1997 WL 664606, at *6 (4th Cir. Oct. 27, 1997)

8

(holding, where a plaintiff's eyes are swollen shut and nose bleeds continuously, he has serious medical needs); *cf. Conboy v. Ocean City*, Civ. No. JFM-08-2367, 2009 WL 4884514, at *2 (D. Md. Dec. 9, 2009) (holding plaintiff failed to establish a substantial risk of serious harm where officers allowed plaintiff to drink a beer because, although alcohol can pose a general health risk, "there [we]re no facts to suggest that defendants were aware that a single beer could create a substantial risk of serious harm to [plaintiff]"). For purposes of this analysis, the Court assumes that Burns's chronic pain, for which he receives regular consultation and treatment, also constitutes a serious medical need.

The second question is whether Burns plausibly alleges that each defendant had actual knowledge of his chronic serious medical needs and responded inappropriately in light of the substantial risk of harm.

Pertinent to the claims against the Medical Defendants, "prison doctors violate the Eighth Amendment if they decline to provide the level of care they deem medically necessary or fail to adequately address a prisoner's complaints that the care he is receiving is not effective." *Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013). But, it is for doctors, not courts, to determine how medical issues, including pain, should be treated. *Wright v. Collins*, 766 F.2d 841, 847 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Burns's allegations show his disagreement with the Medical Defendants' course of treatment rather than their inappropriate treatment.

Doctor Ashraf and Nurse Self treated Burns over the course of two years. They saw Burns regularly, sometimes multiple times a month. Based on this extended treatment, they had actual knowledge of Burns's varicocele and chronic pain. Doctor Ashraf prescribed Burns various pain

medications, some of which were effective, some of which were ineffective and even harmful, causing nausea. The existence of some treatment does not foreclose a deliberate indifference claim, but an inmate must sufficiently allege that the treatment was inappropriate considering the risk. *See Perry v. Meade*, 728 F. App'x 180, 182 (4th Cir. 2018) (holding allegations were sufficient where inmate alleged that doctors prescribed medication and offered advice in response to his assertions that rectal bleeding was worsening, an issue that resulted in hospitalization and a blood transfusion). Burns has not shown Doctor Ashraf and Nurse Self's prescriptions and referrals to be inadequate treatment in light of his chronic ailments.

Burns saw Nurse Practitioner Pierce, Doctor Getachew, and Doctor Yahya about his varicocele, and each recommended over-the-counter medication and declined to order diagnostic imaging testing. Burns does not allege that the medical professionals deemed imaging to be medically necessary but asserts his opinion that imaging was necessary. "[C]ourts have repeatedly rejected Eighth Amendment claims stemming from allegations that medical practitioners failed to provide diagnostic tests—even in cases where such tests might have proved highly beneficial to the prisoner-plaintiffs or where failure to provide such tests may have constituted medical malpractice." *Gardner v. United States*, 184 F. Supp. 3d 175, 186 (D. Md. 2016); *see Foreman v. Fed. Corr. Inst.*, Civ. No. 04-1260, 2006 WL 4537211, at *12 (S.D. W. Va. Mar. 29, 2006) ("Plaintiff's belief that ultrasounds [of his varicocele] or other treatment should have been provided does not establish deliberate indifference on the part of prison staff, as disagreements over the appropriate course of treatment do not rise to the level of a constitutional violation."). Further, disagreements between an inmate and his doctors does not state an Eighth Amendment violation. Indeed, the fact that multiple medical professionals declined to order imaging allows for the reasonable inference that the decision was medically sound. *See Johnson v. Quinones*, 145

F.3d 164, 169 (4th Cir. 1998) (affirming dismissal of deliberate indifference claim against two doctors both of whom failed to diagnose inmate's pituitary tumor because the alternative conclusion that the doctors conspired to cover-up the condition was "so highly improbable").

As for the Pharmacy Defendants, Burns alleges only that they refused to fill one prescription for Tramadol, a synthetic opioid, and, consequently, subjected Burns to continued pain. Prescribing medication is a question for medical professionals. *See United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977)) ("The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."); *Pevia v. Pierce*, Civ. No. ELH-18-1553, 2019 WL 2329845, at *10 (D. Md. May 31, 2019) (holding inmate received constitutionally adequate care where doctor stopped Tramadol prescription out of concern over its long-term use and administered a tapering dose to mitigate withdrawal). Regardless of why the pharmacist denied Burns the prescription, a single denial of pain medication, while Burns was receiving other pain medication, does not rise to a showing of deliberate indifference. *See Outlaw v. Corr. Med. Servs.*, Civ. No. DKC-09-1704, 2010 WL 481353, at *5 (D. Md. Feb. 5, 2010) ("The materials demonstrate that he received pain medications . . . as needed for his complaints of pain. While it appears that there may have been some brief delays in Outlaw's receipt of Ultram, these delays occurred as part of the non-formulary drug approval and issuance procedure.").

Burns alleges that Commissioner Corcoran had knowledge of his chronic medical needs too. Burns alleges that Commissioner Corcoran received Burns's internal complaint that Wexford was ignoring sick call forms and had a responsibility to ensure that Wexford provided adequate medical care. To claim supervisory liability, a plaintiff must allege that the supervisor (1) "had

actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) inadequately responded to that knowledge, thus, showing "deliberate indifference to or tacit authorization of the alleged offensive practices"; and, (3) by his inadequate response, caused the constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted). Based on the analysis of the Medical Defendants above, Commissioner Corcoran's failure to respond to Burns's internal complaint was not inappropriate because Burns was receiving medical care. *Goodman*, 524 F. App'x at 889 (holding insufficient allegations of deliberate indifference where inmate failed to allege facts from which to infer that prison officials interfered with medical care or knew that inmate was receiving improper care).

With respect to Burns's allegations of his chronic ailments, Burns fails to plausibly allege § 1983 claims against the individual defendants.

### 2. *Medical Emergency*

Regarding the medical emergency, Burns alleges that he fell in his cell, cutting open a gash on his face. Bleeding from a gash on one's face constitutes a serious medical need. *See Ervin*, 1997 WL 664606, at *6 (holding plaintiff has serious medical needs where his eyes are swollen shut and nose bleeds continuously). Burns alleges that Nurse Buser failed to respond to this medical emergency on his behalf and Nurse Beeman failed to provide medical care after the fact. Burns alleges that as a result of the lack of care, he has injured blood vessels around his eye. While the allegations themselves explain why Nurse Beeman could not treat the injury—he was not present at the time—they do not explain why Nurse Buser did not respond to the announcement that an inmate was bleeding from his face on her watch. Thus, Burns has sufficiently alleged that Nurse Buser responded inappropriately to his serious medical need.

12

Burns also alleges that Correctional Officer Turner saw that Burns was injured in his cell and failed to get him emergency medical care. Officer Turner reported the incident to Nurse Buser, who advised him that Burns should file a sick call form. By Burns's allegations, Officer Turner knew of Burns's medical emergency and reported that need to a nurse on duty. In general, "prison non-medical staff are 'entitled to rely' on the competence and expertise of prison health care providers," *Moses v. Stewart*, Civ. No. TDC-15-3875, 2017 WL 4326008, at *5 (D. Md. Sept. 26, 2017) (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)[3]), but staff members remain responsible for their own decisions regarding an inmate in their charge, *Iko*, 535 F.3d at 242. While reporting a medical emergency to a nurse was appropriate, doing nothing when the nurse refused to provide treatment was not. Burns has plausibly alleged that Officer Turner responded inappropriately to Burns's serious medical need.

Burns plausibly alleges that Nurse Buser and Officer Turner were deliberately indifferent to Burns's medical emergency. Because Medical Defendants do not raise alternative arguments as to why Burns's allegations against Nurse Buser are insufficient, she will not be dismissed.

State Defendants argue that Officer Turner is protected by qualified immunity, but they fail to carry their burden of articulating how Officer Turner's failure to assist a bleeding inmate was not a violation of a clearly established constitutional right to adequate medical care. *See Krell v. Queen Anne's Cty.*, Civ. No. JKB-18-637, 2018 WL 6523883, at *9 (D. Md. Dec. 12, 2018) (citing *Campbell v. Moore*, 92 F. App'x 29, 33 (3d Cir. 2004)). Indeed, the Fourth Circuit has held that detainees have a clearly established right to immediate medical care when they are visibly injured and in pain. *Ervin*, 1997 WL 664606, at *6 (holding it was "a violation of clearly established law to deny a pretrial detainee immediate medical care whose eyes were swollen shut, whose face was

---

[3] *Miltier* has been overruled by *Farmer v. Brennan*, 511 U.S. 825, 840 (1994), to the extent that it allowed a finding of deliberate indifference on a defendant's constructive, rather than actual, knowledge.

13

broken, and whose nose had bled all night and continued bleeding."); *Iko*, 535 F.3d at 243 (holding it was objectively unreasonable for officers to fail to attend to a nonresponsive detainee whom the officers had repeatedly pepper-sprayed before leaving him face down on the floor). Because the defense of qualified immunity fails, Officer Turner will not be dismissed at this time.

### C. *Monell*

Burns attempts to state *Monell* claims against Wexford and Correct Rx. Because Wexford and Correct Rx contracted with Maryland to provide state inmates with medical services, they can be held liable for constitutional violations under § 1983 if they had an official policy, practice, or custom that caused plaintiff's constitutional rights to be violated. *Foreman v. Wexford Health Sources, Inc.*, Civ. No. ELH-17-26, 2018 WL 638290, at *14 (D. Md. Jan. 31, 2018) (citing *West v. Atkins*, 487 U.S. 42, 49–50 (1988)). A policy, practice, or custom can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir.1999)).

Burns alleges that, among Wexford employees at North Branch, "there is a custom of disregarding sick call forms submitted by inmates." (Compl. ¶ 35.) Burns also alleges that Correct Rx maintained a policy and custom of allowing its employees to disregard prescriptions ordered on behalf of state inmates. (*Id.* ¶ 197.) Although the Court liberally construes the allegations of a pro se complaint, these conclusory statements are unsupported by any factual allegations that would allow the Court to infer the existence of an express policy or a widespread custom of

constitutional violations. *See Hendrick*, 141 F. Supp. 3d at 401 (dismissing *Monell* claim because plaintiff failed to allege "specific conduct by Wexford" or "a custom or policy of Wexford that result in a deprivation of his constitutional rights"). Burns supplies his own experience—that his sick call forms went ignored and that his prescriptions were not being filled—but he puts forward no allegations from which to infer that any other inmate had the same experience. Therefore, Burns has not offered sufficient facts to allege *Monell* claims that are plausible on their face.

With the exception of the claims against Nurse Buser and Officer Turner, the deliberate indifference claims against all other defendants fail at the motion to dismiss stage.

### *III.  Motion for Temporary Restraining Order*

Burns seeks an injunction, ordering Defendants to arrange for a urological specialist to evaluate him and draft a treatment plan that would provide for: (1) imaging testing to detect the existence of any serious medical conditions underlying his varicocele; (2) any follow-up imaging testing; (3) any treatment for any underlying medical conditions; (4) referrals to any necessary specialists; and (5) any follow-up care. (TRO Mot. at 1.) "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To receive a preliminary injunction, a plaintiff must satisfy all four elements. *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019).

As determined in this Memorandum, Burns fails to sufficiently allege that Defendants were deliberately indifferent to his varicocele condition, the condition for which he seeks treatment in his request for injunctive relief. *B.G. v. Malhotra*, Civ. No. RDB-15-2663, 2016 WL 3384941, at *7 (D. Md. Jun. 20, 2016) (denying injunctive relief where plaintiff fails to state a plausible claim

for relief because the dismissal "necessarily signifies that [p]laintiff is *unlikely* to succeed on the merits"). Consequently, Burns fails to show a likelihood of success on the merits. Because Burns fails to establish one of the essential elements to justify injunctive relief, his motion for injunctive relief will be denied.

## *IV. Motions for Summary Judgment*

The Court turns to the remaining claims: those against Nurse Buser and Officer Turner regarding the alleged medical emergency. On this narrow issue, the Court denies summary judgment without prejudice, allowing Burns to pursue discovery related to Burns's January 2018 head injury.

Burns filed a pro se Rule 56(d) motion seeking to bar consideration of Defendants' summary judgment motions because he has not had the opportunity to participate in discovery. Burns succeeds in raising the issue by filing an affidavit, (*see* Rule 56(d) Affidavit, ECF No. 37-2), explaining the specific reasons he cannot present the facts essential to its opposition without the needed discovery, *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), and listing the specific evidence that he seeks to obtain, *Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011). Specifically, Burns declares that Defendants possess his complete medical record and yet failed to attach the complete record to their summary judgment motions.

"Rule 56(d) requires 'that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (quoting *Nguyen v. CAN Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)). Rule 56(d) motions "are 'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) (quoting *Greater Balt.*

*Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)). "A court should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). "But a court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Id.*

Here, Burns seeks more documents related to his requests for care, actual images from his past MRIs and EKGs, any existing patient transfer summaries between corrections institutions, and any other missing medical records. (Rule 56(d) Affidavit at 1.) Burns does not explicitly state that he needs discovery to uncover the January 2018 records and to depose Officer Turner and Nurse Buser. Given the complexity of Burns's claims and given that he filed his Rule 56(d) motion pro se, however, the Court will broadly construe his request for discovery.

Moreover, if the Court were to consider Defendants' evidence at this time, the Court would have to make an improper credibility determination. Medical Defendants seek to submit an affidavit in which Nurse Buser declares that she "was never informed that [Burns] had lost consciousness and sustained a bleeding gash over his right eye on January 4, 2018" and that she "never refused to see or treat [Burns] on January 4, 2018." (Med. Def. Mot. Dismiss & M.S.J. Exh. 3 ¶ 3, ECF No. 22-6.) Burns must be given the opportunity to challenge the veracity of this statement through discovery.

## V. *Conclusion*

For the foregoing reasons, an Order shall enter denying Burns's motion for injunctive relief, granting in part and denying in part Medical Defendants' motion to dismiss or, alternatively, for summary judgment, granting in part and denying in part State Defendants' motion to dismiss

17

or, alternatively, for summary judgment, granting Pharmacy Defendants' motion to dismiss or, alternatively, for summary judgment, and granting Burns's Rule 56(d) motion.

DATED this 29 day of August, 2019.

BY THE COURT:

_/s/ James K. Bredar_

James K. Bredar
Chief Judge